**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250409-U

Order filed May 5, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| MICHAEL IVAYLOV PANCHEV f/k/a | | Du Page County, Illinois, |
| MIHAIL IVAYLOV PANCHEV, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | Appeal No. 3-25-0409 |
| | ) | Circuit No. 22-DC-689 |
| and | ) | |
| | ) | Honorable |
| TEODORA ANGELOVA ALEKSIEVA, | ) | Kenton J. Skarin, |
| | ) | Judge, Presiding. |
| Respondent-Appellee. | ) | |

_____

JUSTICE BERTANI delivered the judgment of the court.
Justices Holdridge and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:    The circuit court abused its discretion when it failed to provide sufficient reasons for its decision to reduce the fees requested in a petition for attorney fees presented pursuant to section 508(b) of the Illinois Marriage and Dissolution of Marriage Act but acted appropriately when denying requested attorney fees under the same section when no proceeding for enforcement took place.

¶ 2    Petitioner, Michael Ivaylov Panchev, appeals the Du Page County circuit court's judgment to award him $4,000 in attorney fees against respondent, Teodora Angelova Aleksieva, for his

petition for attorney fees under section 508(b) of the Illinois Marriage and Dissolution of Marriage Act (Act). 750 ILCS 5/508(b) (West 2024). Michael argues that the court erred in reducing the award from the amount requested without explanation and that the court should have granted attorney fees for a violation of an agreed order that was resolved out of court. We conclude that the court did not provide sufficient explanation for its reduction in fees, which constitutes an abuse of discretion. Additionally, we find that the court did not err when it declined to award fees for the violation of the agreed order that did not result in court proceedings to obtain compliance. We affirm in part and reverse in part.

¶ 3                                    I. BACKGROUND

¶ 4        Michael and Teodora were married on March 3, 2015, and bore two children from the union. Michael filed a petition for dissolution of marriage on August 2, 2022, after seven years of marriage. The court signed a judgment for dissolution of marriage on May 3, 2023.

¶ 5        Since entry of the judgment, the parties continued to make appearances in court to address various alleged violations of the marriage settlement agreement (MSA) and parenting plan. Relevant to this appeal, the parties entered an agreed order on October 19, 2023, amending the MSA to provide that Michael would vacate the marital property in Glen Ellyn and make it available to Teodora, while Teodora would do the same for Michael with the Elmhurst property. The order included a provision that if either party needed to take necessary steps to enforce this order, he or she "shall pay the other party's reasonable attorney's fees and court costs incurred to enforce this agreement." Teodora did not vacate the Elmhurst property on the agreed upon date, and Michael engaged his attorney to facilitate her vacating the property. However, the issue was resolved without resorting to court proceedings.

2

¶ 6        On May 3, 2024, Michael filed a petition for rule to show cause against Teodora alleging that she failed to cooperate in the transfer of certain timeshares awarded to Michael in the MSA. Teodora provided the deed to the Wisconsin timeshare after Michael filed the petition but before any hearing took place. The court denied Michael's petition, as Teodora was making efforts to become compliant. However, it noted that it was the filing of the petition that compelled Teodora to begin taking steps to comply with the MSA and further ordered her to turn the deed of the Virginia timeshare over by July 26, 2024.

¶ 7        Michael filed another petition for rule to show cause on October 8, 2024, which he later amended to a petition to enforce or modify the parties' January 11, 2023, parenting plan and allocation judgment. He alleged several parenting plan violations, including that Teodora signed consent forms for evaluations for their child without first obtaining Michael's consent and that she intentionally misinformed him about when those evaluations would take place. The petition also alleged that Teodora interfered with Michael's parenting time by withholding the children during his pickup time, failing to pick up the children on time from school and from Michael's residence, and dropping the children off with Michael unannounced when he did not have scheduled parenting time. After an evidentiary hearing, the court found that Teodora had violated certain provisions of the parenting plan.

¶ 8        Michael filed a three-count petition for attorney fees under section 508(b) of the Act on June 15, 2025, requesting the court order Teodora to pay the attorney fees related to filing and litigating both petitions and for the enforcement of the agreed order. Regarding the May 3, 2024, and October 8, 2024, petitions, Michael argued that Teodora's violations were "without compelling cause or justification," and requested all attorney fees related to pursing the petitions. As for the agreed order, Michael requested attorney fees under section 508(b) of the Act and also

3

noted that the order specifically provided for the award of attorney fees incurred to enforce its terms.

¶ 9　　　　The court held a hearing on Michael's petition during which his attorney presented billing statements for each count listed in the petition. She also explained to the court the basis for requesting fees related to the October 19, 2023, agreed order. Specifically, that order required that Teodora vacate the Elmhurst property by December 12, 2024; however, she did not move out until December 15. This violation led to Michael contacting his attorney to enforce compliance. The billing statement corresponding to the violation of this order included increments for emails and telephone conversations with Michael and Teodora to facilitate the move. Michael's attorney told the court she had emails she could present to substantiate these claims but declined to submit them to the court. Teodora admitted that she did not vacate the property on time and that the issue was resolved in a series of emails. No pleadings were filed to compel her compliance.

¶ 10　　　　The court first addressed the October 19, 2023, agreed order. It noted that, "the various arguments I have heard here today on both sides had numerous statements that are not supported either by the record or by the evidence that I have in front of me. *** I will simply state, as I have already suggested, I'm disregarding any argument that was unsupported." It further found that the petition for attorney fees was filed pursuant to section 508(b) of the Act, which related to proceedings for the enforcement of prior orders. The resolution of any violation of the agreed order occurred outside of court, and it did not believe section 508(b) was intended to provide for fees in such circumstances. It denied Michael's request for attorney fees on the issue.

¶ 11　　　　As for the remaining two counts in the petition for fees, the court found that Teodora had violated the MSA and parenting plan "without compelling cause or justification," and Michael was

forced to pursue enforcement of those orders through his May 3, 2024, and October 8, 2024, petitions. Accordingly, the court determined it must award fees to Michael.

¶ 12 The court turned to determining the reasonableness of the attorney fees submitted by Michael's attorney relating to the May 3, 2024, and October 8, 2024, petitions. The billing statements showed that Michael had been billed for $7,994 for the October 8, 2024, petition and $2,237.50 for the May 3, 2024, petition. The court noted that the attorney's hourly rate of $250 was "extremely low" when compared to competing firms in the community. It also stated, "Much of the billing statements consist of very small time increments, in fact as small as .05 hours for communications back and forth," with larger increments for court appearances and preparation for hearings included. Further, "the only point I'm making is there are fair amounts of actual in-court time and preparation, as well as numerous small entries for communications." During its review of the billing statements, Teodora interrupted the court and indicated that she did not have the funds to pay for any of the attorney fees requested. The court awarded a total of $4,000 in attorney fees to be paid by Teodora, $3,000 for one petition and $1,000 for the other, based on "the entire history of the case."

¶ 13 Michael now appeals.

¶ 14                                II. ANALYSIS

¶ 15 On appeal, Michael argues that the court abused its discretion when it reduced the attorney fee award without explanation. He also argues that the court erred in finding that attorney fees could not be granted for the actions to enforce the agreed order merely because it did not result in court filings or appearances.

¶ 16 Section 508(b) of the Act provides that,

5

"[i]n every proceeding for the enforcement of an order or judgment when the court finds that the failure to comply with the order or judgment was without compelling cause or justification, the court shall order the party against whom the proceeding is brought to pay promptly the costs and reasonable attorney's fees of the prevailing party." 750 ILCS 5/508(b) (West 2024).

¶ 17 This provision "makes mandatory the imposition of attorney fees where the party seeking the enforcement of a court order prevails and the court finds that the other party's failure to comply was without compelling cause or justification." *In re Marriage of Hyman*, 2024 IL App (2d) 230352, ¶ 9. Accordingly, the circuit court must consider not whether to award fees, but whether the fees requested are reasonable. *Id.* The attorney presenting the fee petition bears the burden of proving fees were reasonable, and only those that are reasonable will be awarded. *Kaiser v. MEPC American Properties*, 164 Ill. App. 3d 978, 983 (1987). A proper fee consists of reasonable charges for reasonable services. *Id.* However, the movant cannot simply submit a mere compilation of hours multiplied by a fixed hourly rate or bills issued to the client to justify a fee award. *Id.* at 984. Such information, without more, does not provide the court with sufficient information to determine their reasonableness. A court may not conclude fees are reasonable on the basis of conjecture or on the opinion or conclusions of the attorney seeking them. *Id.* Rather, a fee petition must identify the services performed, by whom they were performed, the time expended thereon, and the hourly rate charged for said services. *Id.* Because these factors are critical, the movant must present "detailed records maintained during the course of the litigation containing facts and computations upon which the charges are predicated." *Id.* Once presented with this information, the court should then review other relevant considerations, including:

"the skill and standing of the attorneys, the nature of the case, the novelty and/or difficulty of the issues and work involved, the importance of the matter, the degree of responsibility required, the usual and customary charges for comparable services, the benefit to the client [citation], and whether there is a reasonable connection between the fees and the amount involved in the litigation [citation]." *Id.*; *In re Estate of Callahan*, 144 Ill. 2d 32, 44 (1991).

The court may also use its own knowledge and experience in determining whether a fee is reasonable. *Kieken v. City of Joliet*, 2023 IL App (3d) 220392, ¶ 34. A party's inability to pay is not a factor for the court to consider under section 508(b). See *In re Marriage of Wiley*, 199 Ill. App. 3d 223, 233 (1990).

¶ 18    We will not reverse a trial court's award of attorney fees absent an abuse of discretion. *Hyman*, 2024 IL App (2d) 230352, ¶ 9. A court abuses its discretion when it is determined that no reasonable person would adopt its position. *In re Marriage of Sanfratello*, 393 Ill. App. 3d 641, 646 (2009).

¶ 19    Here, the court found that Teodora's failure to comply with the MSA and parenting plan resulted in Michael filing two petitions to enforce them. It also found that Teodora's actions were without compelling cause or justification. Thus, the award of attorney fees became mandatory, and the court's only decision was whether the fees provided under the billing statements were reasonable. *Hyman*, 2024 IL App (2d) 230352, ¶ 9.

¶ 20    The court noted two things about the billing Michael's attorney provided: that the attorney billed at an hourly rate that was low compared to other rates in the community and that there were many small increments of time billed for communication. At no point did the court state the smaller increments of time billed were unreasonable—only that they added up to "large numbers."

7

Moreover, in its final ruling, the court did not provide any explanation for its reduction of fees in the award; it merely stated that it considered the history of the case and the court appearances it conducted.

¶ 21	The circuit court must provide a specific explanation for its fee determination when awarding fees. *Robinson v. Point One Toyota, Evanston*, 2017 IL App (1st) 151124, ¶ 25. "While the explanation need not be painstaking, 'the order awarding fees, read against the backdrop of the record as a whole, must expose the [trial] court's thought process and show the method and manner underlying its decisional calculus.' " *Id.* (quoting *Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F. 3d 331, 337 (1st Cir. 1997)). The demonstration of the court's thought process is especially important in cases where the court awards an amount substantially less than what was requested. *Id.* Without an explanation for its ruling "the reviewing court will be unable to conduct an adequate review and remand for further findings will be required." *Id.*

¶ 22	The court here failed to provide any explanation for reducing the fees to less than half of the fees set forth in the billing statements presented to the court; therefore, we find that it abused its discretion. See *Hyman*, 2024 IL App (2d) 230352, ¶ 10 (the lack of an explanation for a reduction in fees is an abuse of discretion when no reason is apparent from the record itself). Accordingly, we must vacate the attorney fee award and remand the matter to allow the circuit court to set forth the basis for its determination. *Id.* We express no opinion on the reasonableness of the fees.

¶ 23	Michael also argues that the court improperly denied his petition for attorney fees for the enforcement of the agreed order. He contends that, while he did not have to resort to initiating court proceedings to enforce the agreed order, section 508(b) still permitted an attorney fee award. He also argues that he is nevertheless entitled to attorney fees because the agreed order itself

8

provided that if either party is ever noncompliant, he or she will be responsible for attorney fees the other party incurred while enforcing the terms of the agreed order.

¶ 24    Michael's petition specifically requests for attorney fees pursuant to section 508(b) of the Act. To receive fees under this section, some kind of court proceeding to force compliance must take place. See *In re Marriage of Kent*, 267 Ill. App. 3d 142, 144 (1994) ("The plain meaning of the statute allows the recovery of fees incurred *in any proceeding* that has as its goal the enforcement of an order or judgment entered in a dissolution proceeding." (emphasis added)); see also 750 ILCS 5/508(b) (West 2024). Accordingly, we find that the out-of-court communications between Michael's attorney and Teodora are not sufficient for Michael to be awarded attorney fees, as no proceeding to enforce the agreed order took place.

¶ 25    Finally, Michael argues that the court had the inherent authority to enforce its orders and erred by declining to exercise that authority here. This argument was not raised in the circuit court during the hearing for attorney fees—Michael only argued attorney fees should be awarded pursuant to section 508(b). We therefore find this argument forfeited. See *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 14 (contentions not raised in the trial court are forfeited and may not be raised on appeal).

¶ 26                                    III. CONCLUSION

¶ 27    In sum, we find that the court did not abuse its discretion in declining to award attorney fees as it related to the October 19, 2023, agreed order. However, the circuit court did abuse its discretion when reducing the amount of attorney fees awarded without sufficient explanation for the reduction. The cause must be reversed and remanded for the circuit court to review and provide a sufficient basis on the record for its determination as to attorney fees it awards to Michael.

¶ 28        The judgment of the circuit court of Du Page County is affirmed in part, reversed in part, and remanded with instructions.

¶ 29        Affirmed in part; reversed in part. Cause remanded.